**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

F I L E D

FEB 1 1 2009

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

JAMES D. HALL,            )
                             )
     Plaintiff,         )
                             )
v.                       )     Civil Action No. 3:07CV576-HEH
                             )
E. PEARSON, *et al.*,     )
                             )
     Defendants.     )

**MEMORANDUM OPINION**
**(Granting the Motion for Summary Judgment by Defendants Pearson and Schilling)**

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983. Plaintiff claims that Defendants Pearson, Schilling, and Amonette were deliberately indifferent to his serious medical needs when they did not refer him to a dermatologist after his October 2, 2006 request.[1] This matter is before the Court on a motion for summary judgment by Defendants Pearson and Schilling.[2]

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

---

[1] Defendant E. Pearson is the warden at the Powhatan Correctional Center ("PCC"). Defendant Fred Schilling is Health Services Director for the Virginia Department of Corrections ("VDOC"). The remaining defendant, Dr. Mark Amonette, is a prison physician at PCC. For the sake of clarity, he is referred to as "Dr. Amonette" rather than "Defendant Amonette."

[2] Dr. Amonette has not filed a motion for summary judgment.

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the

court of the basis for the motion, and to identify the parts of the record which demonstrate

the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a

dispositive issue, a summary judgment motion may properly be made in reliance solely on

the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324

(internal quotation marks omitted). When the motion is properly supported, the

nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that

there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(c) and 56(e) (1986)

(amended 2007)). When reviewing a summary judgment motion, a court "must draw all

justifiable inferences in favor of the nonmoving party . . . ." *United States v. Carolina*

*Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986)).

## II. UNDISPUTED FACTS AND ALLEGATIONS

Defendants have submitted affidavits, copies of Plaintiff's grievances, copies of

Plaintiff's medical records, and copies of the relevant prison regulations. Plaintiff has

submitted a verified complaint, an unsworn memorandum of law, and pictures of his

scalp. In light of the foregoing principles and submissions, the following facts are established for the purposes of this motion for summary judgment.

A.   **Plaintiff's Medical Treatment Prior to October 2, 2006**

Plaintiff has suffered from recurring scalp folliculitis since at least January 12, 2000. Since his arrival at PCC on February 13, 2001, Plaintiff has been seen by medical staff for this condition on at least forty-five separate occasions. In spite of the treatment, the afflicted area continued to spread. On June 20, 2005, Plaintiff submitted a request to see a dermatologist. On June 23, 2005, Dr. Amonette informed Plaintiff that he would request an off-site visit to a dermatologist. On September 7, 2005, Plaintiff filed a grievance complaining that he had not yet been sent to a dermatologist. According to a response by the warden, the request had been approved, but the appointment was never scheduled. Accordingly, on October 11, 2005, Dr. Amonette submitted a second request.

On October 18, 2005, Plaintiff was seen by a dermatologist, who recommended a course of treatment that included the antibiotic Clindamycin. Although PCC would not obtain Clindamycin, Dr. Amonette was able to implement the recommended course of treatment because the dermatologist provided sample vials of the drug.

On December 6, 2005, Plaintiff returned to the dermatologist for a follow-up visit. The dermatologist reported that Plaintiff was doing well overall, that no active infection existed, and that his scalp condition was stable. He recommended that Plaintiff continue his current course of treatment.

3

Prior to using all of the Clindamycin samples, Plaintiff visited Dr. Amonette, who informed him that the medication would not be refilled because no generic form of Clindamycin existed. Dr. Amonette also denied his request to return to the dermatologist. At some point in 2006, the Clindamycin samples ran out.

**B.      Medical Treatment on and after October 2, 2006**

On October 2, 2006, Plaintiff was referred to Dr. Amonette because his scalp was bleeding. Dr. Amonette found that Plaintiff's scalp was scaly, with few pustules and no purulent discharge. Noting that Plaintiff's folliculitis appeared to be reflaring, Dr. Amonette recommended that Plaintiff return to the course of dermatologist-ordered treatment, including Clindamycin. On November 1, 2006, Plaintiff returned to Dr. Amonette for a follow-up visit. Dr. Amonette found that Plaintiff's scalp had a few raw areas, but no active drainage and only minimal scaling. Dr. Amonette continued the same course of treatment, including Clindamycin.

As of July 9, 2008, Plaintiff had not filed any more medical requests regarding his scalp condition. Plaintiff currently suffers from scalp inflammation, scaling, and scarring.

**C.      Plaintiff's Medical Grievances on and after October 2, 2006**

On October 2, 2006, Plaintiff filed an informal complaint asking that he be reassigned to the dermatologist for care. On October 9, 2006, an unidentified PCC staff member responded by advising plaintiff to come to the pill line to pick up his medication. On October 18, 2006, Plaintiff filed a formal grievance on the issue. Plaintiff explained

4

that his current course of treatment was merely slowing the spread of his infection, not

curing it, and that he continued to experience pain and bleeding. On November 16, 2006,

Defendant Pearson responded:

> On 10/2/06 a decision was made by Dr. Amonette to return to
> the recommended treatment by the Dermatologist, you were
> prescribed Keflex and instructed to continue with the
> shampoo. A follow up visit for MD sick call was noted. On
> 11/1/06 you were seen on MD sick call for a recheck of your
> scalp. Dr. Amonette noted there were a few raw spots but no
> active drainage. There was also minimal scaling. Dr.
> Amonette's recommended treatment was to continue with the
> ointment and gel. A follow up visit was recommended in two
> months. . . . After completion of Dr. Amonette[']s
> examination, if he feels a visit to the Dermatologist is
> necessary an appointment will be scheduled.

(Pl.'s Compl., Ex. C.) Defendant Pearson further explained that health care treatment

decisions are the sole responsibility of health care personnel. Defendant Pearson

concluded that Plaintiff's grievance was unfounded.

Plaintiff appealed, claiming that his condition, which began as a small dot, now

covered eighty-five percent of his scalp and was still spreading. Moreover, the infection

was bleeding and killing his hair. The Chief Physician investigated the appeal and

drafted the following response, which was formalized and signed by Defendant Schilling

on December 6, 2006:

> I concur with the Level I respondent and determine your
> grievance **UNFOUNDED**. According to the information
> available, Dr. Amonette examined you on 10/2/06 and
> ordered the same medication that the dermatologist ordered a
> year ago. He saw you again on 11/1/06 and noted that there

> were "few raw areas, no active drainage, and minimal
> scaling." He continued the same medications and requested a
> follow-up in two months. . . . It does not appear an outside
> consult was indicted [sic] at the time.

(Pl.'s Compl., Ex. D (punctuation corrected).)

## D.   Plaintiff's Claim for Relief

Plaintiff claims that Defendants had actual knowledge of his scalp infection and

the risk it posed to his future health, but failed to take reasonable measures – specifically,

arranging continued treatment by a specialist – to abate the substantial risk to his future

health caused by the scalp infection. Instead, Defendants were deliberately indifferent to

his condition, choosing the less expensive and easier, but grossly inadequate alternative of

continued treatment by Dr. Amonette. As a result, Plaintiff continues to suffer from scalp

pain and bleeding. In addition to injunctive relief compelling Defendants to arrange for

treatment by a dermatologist, Plaintiff seeks nominal, compensatory, and punitive

damages. He also seeks attorney's fees of $20,000, and an award of costs. Defendants

Pearson and Schilling argue, *inter alia*, that they were not deliberately indifferent to

Plaintiff's medical condition and that Plaintiff received prompt medical care. (Defs.'

Mem. in Supp. of Mot. for Summ. J., at 6–8.)

## III. DISCUSSION

An inmate's Eighth Amendment[3] rights are violated when he is subjected to an unnecessary and wanton infliction of pain, *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A two-part test is used to determine whether prison conditions present a constitutional violation. The plaintiff must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials *subjectively* acted with a "'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 298). Defendants have not presented a well-articulated challenge to the objective component.[4]

"Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S.

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] Defendants admit that "a medical condition is sufficiently serious if it has been diagnosed by a physician as requiring treatment," then argue that Plaintiff's condition was not objectively sufficiently serious because Plaintiff "was assessed and treated by the institutional physician and a dermatologist." (Defs.' Mem. in Supp. of Summ. J., at 6).

at 105–06). This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Evidence that a defendant recklessly refused or delayed in providing a plaintiff with access to medical professionals with sufficient expertise to evaluate and treat a particular condition may support an inference of deliberate indifference. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277–79 (10th Cir. 2001).

Nevertheless, absent exceptional circumstances, disagreements between an inmate and a physician over what level of care is proper cannot support an Eighth Amendment Claim. *See, e.g., Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("The affidavits submitted . . . reflect that [plaintiff] was under constant medical supervision from the time of his arrival . . . . Questions of medical judgment are not subject to judicial review.") (citation omitted). Moreover, when an inmate is under a physician's care, a nonmedical prison official "can generally rely on his medical staff's examinations and diagnoses" in determining what level of treatment is warranted. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990)). In

8

order to defeat the presumption that such reliance was reasonable, the inmate must show that the supervisory official knew that the care provided was so obviously incompetent that it posed a substantial risk of harm to the inmate's health. *Miltier*, 896 F.2d at 855. Thus, Plaintiff must show that Defendants Pearson and Schilling: (1) failed to promptly provide him with needed medical care; (2) deliberately interfered with the doctors' performance; or (3) tacitly authorized or were indifferent to Dr. Amonette's obvious constitutional violations. *Id.* at 854 (citations omitted).

Plaintiff argues that Dr. Amonette's care in 2006 amounted to "no medical treatment at all" because, unlike a dermatologist, Dr. Amonette "does not posses [sic] the intricate intellectual medical means to effectively treat my scalp condition." (Pl.'s Compl., Ex. C, Att. 1, at 2.) However, Plaintiff's disagreement with Dr. Amonette's decision not to refer him to a dermatologist does not support an Eighth Amendment claim. *Wright*, 766 F.2d at 849. Defendants argue that Plaintiff has always received prompt medical care, as shown by the forty-five separate instances of treatment for his scalp condition since his arrival at PCC on February 13, 2001. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J., F. Schilling Aff. ¶ 10.) Medical records for the year 2006 show that Plaintiff did not complain of scalp bleeding until September 20, 2006, at which time the October 2, 2006 appointment was scheduled. Plaintiff has thus failed to show any evidence that Defendants Pearson and Schilling refused to provide him with medical care.

Plaintiff also claims that Defendants acted with deliberate indifference to the fact that he was receiving constitutionally inadequate medical care. Specifically, Plaintiff complains that Dr. Amonette was less qualified to treat his scalp condition than a dermatologist would have been and that his need for a dermatologist was obvious, even to a layman. Defendants Pearson and Schilling are administrators, not medical doctors. Unless Dr. Amonette's medical judgment was obviously incompetent, they were entitled to rely on his decision not to refer Plaintiff to an outside doctor in late 2006. *See Iko*, 535 F.3d 242; *Miltier*, 896 F.2d at 855.

In his grievances, Plaintiff complained that his treatment by Dr. Amonette instead of a dermatologist amounted "to no medical treatment at all," and that he was not receiving the drug Clindamycin. (Pl.'s Compl. Ex., C, Att. 1, at 2.) Plaintiff's conclusory assertions that certain treatments were necessary do not show that Dr. Amonette's judgment was obviously incompetent. A doctor's appointment was scheduled after Plaintiff complained that his scalp had begun bleeding again. Clindamycin treatment resumed, and Plaintiff's condition improved after his visits to Dr. Amonette in October and November of 2006. The record further reflects that Dr. Amonette encouraged Plaintiff to return for a follow-up appointment two months later. Nevertheless, Plaintiff failed to pursue further medical evaluation of his condition. Indeed, the only record for 2007 indicates that Plaintiff failed to attend an appointment scheduled on February 14, 2007. Plaintiff has not rebutted Defendants' evidence that they neither *"actually knew of*

and *disregarded* a substantial risk of serious injury" nor "*actually knew of* and *ignored* [a] serious need for medical care." *Parrish*, 372 F.3d at 302 (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001)). Thus, no contested issue of material fact exists as to whether Defendants' deliberate indifference to Plaintiff's medical needs violated his rights. Plaintiff has similarly failed to rebut Defendants' showing that they did not interfere with his medical care.

Finally, Plaintiff has failed to show any evidence that suggests that, if he were to seek medical attention for his condition, he would not receive whatever medical care was appropriate, including referral to a dermatologist. Thus, Plaintiff has not shown, as he must, that irreparable injury will result unless an injunction issues. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)).

Defendants' motion for summary judgment will be granted.

An appropriate order shall issue.

/s/

Henry E. Hudson
United States District Judge

Date: Feb. 11, 2009
Richmond, Virginia

11