IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES D. HALL, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:07CV576-HEH
)
E. PEARSON, *et al.*, )
)
    Defendants. )

**MEMORANDUM OPINION**
(Granting the Motion For Summary Judgment by Defendant Amonette
and Dismissing this Action)

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983. On February 11, 2009, the Court granted the motion for summary judgment by Defendants Pearson and Schilling, and dismissed them from this action. Plaintiff's remaining claim is that Defendant Amonette, a prison physician formerly employed at Powhatan Correctional Facility ("PCC"), was deliberately indifferent to Plaintiff's serious medical needs when he did not refer him to a dermatologist after his October 2, 2006, request. Defendant has filed a motion for summary judgment, to which Plaintiff has responded. This matter is ripe for judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(c) and 56(e) (1986) (amended 2007)). When reviewing a summary judgment motion, a court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## II. UNDISPUTED FACTS

Defendant has submitted an affidavit and copies of Plaintiff's medical records, and relies additionally on materials already filed with the Court. Plaintiff has failed to identify, as he must, the material issues of fact which he feels are subject to dispute. *See* Fed. R. Civ. P. 56(e)(2) (providing that party opposing motion for summary judgment must "set out specific facts showing a genuine issue for trial"); *see also* E.D. Va. Loc. Civ

R. 56(B).[1] Instead, Plaintiff points generally to all of his prior submissions, stating that "[a]ny and all evidence on file" supports his claim. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.) Similarly, Plaintiff cites without explanation to more than forty pages of records filed by Defendant in support of the motion for summary judgment, claiming that Defendant "clearly admits" that he was deliberately indifferent to Plaintiff's serious medical needs. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.) This does not establish that any fact asserted by Defendant is subject to dispute. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). In light of the foregoing principles and submissions, the following facts are established for the purposes of this motion for summary judgment.

Defendant first treated Plaintiff for a scalp infection on February 26, 2001. At that time, Plaintiff's condition had been ongoing for the previous three to four years. Defendant discovered a large, irregular bare area on the back of Plaintiff's scalp that was covered with scabs and pustules. Defendant diagnosed Plaintiff with Pustular Folliculitis

---

[1] "A brief in response to [a motion for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B)

(a scalp infection) and sent a scraping to a lab for testing. On March 2, 2001, Defendant noted that Plaintiff had a staph infection and prescribed oral antibiotics, along with a topical solution (Erythromycin). On March 5, 2001, lab tests of the scrapings revealed that Plaintiff had a bacterial infection only, and Defendant decided to continue the planned treatment.

Plaintiff did not appear for a scheduled follow-up on March 23, 2001. Defendant rescheduled for April 6, 2001, on which date Defendant noted that Plaintiff had not been taking the oral antibiotic as prescribed; additionally, Plaintiff claimed never to have received the Erythromycin. Defendant scheduled a follow-up appointment for May 4, 2001, which Plaintiff did not attend. At the rescheduled May 10, 2001, appointment, Defendant noted the presence of pustules and scarring, but also an overall improvement in Plaintiff's condition. Defendant refilled Plaintiff's prescriptions and instructed him to apply a warm compress to his scalp several times daily. Defendant informed Plaintiff that scarring existed, and that not all of his hair would grow back.

Plaintiff did not appear for a scheduled follow-up on July 9, 2001. Defendant rescheduled for July 16, 2001, on which date Defendant noted that Plaintiff's condition had improved. Plaintiff did not appear for his next scheduled appointment in October 2001. On November 9, 2001, Plaintiff requested a refill of his medications. On December 17, 2001, Defendant's examination revealed bloody serous discharge from Plaintiff's scalp. Defendant refilled Plaintiff's medication and advised him to follow up

in one month. On January 15, 2002, Defendant determined Plaintiff's condition was stable after an examination revealed no pustules or lesions. Defendant advised Plaintiff to wash his hair at least every other day and to use the topical solution. After a March 14, 2002, examination revealed no drainage, pain, tenderness, or acute follicular lesions, Defendant advised Plaintiff to continue using the topical solution and prescribed an anti-fungal shampoo. On March 28, 2002, Defendant renewed the prescription for topical solution.

On May 9, 2002, Defendant detected scattered pustular follicles on Plaintiff's scalp. Defendant refilled Plaintiff's prescription for the oral antibiotics and advised Plaintiff to continue using the anti-fungal shampoo, topical solution, and a warm compress. On May 24, 2002, Defendant noted that Plaintiff's condition had improved and the pustules were gone.

On August 21, 2002, Plaintiff complained that his scalp condition had flared and that he had no medication. Defendant refilled Plaintiff's prescriptions and advised him to put in a sick call request if his condition did not improve. Defendant renewed Plaintiff's prescription for Erythromycin on April 16, 2003, October 3, 2003, and March 4, 2004.

On March 30, 2004, Defendant examined Plaintiff after he complained that his scalp condition had spread. Defendant ordered another culture, prescribed an oral antibiotic (Keflex), and refilled the Erythromycin prescription. At a follow-up appointment on April 28, 2004, Defendant noted scaliness of the scalp, but no purulent

discharge. Defendant advised Plaintiff to continue using the Erythromycin. On May 14, 2004, Defendant discovered from Plaintiff's lab results the presence of a saprophytic fungus. On June 2, 2004, Defendant renewed Plaintiff's medication and requested a referral to a dermatologist.

On January 5, 2005, Defendant noted that Plaintiff's condition appeared to be spreading. Defendant requested a fungal culture and made a special request for Cleocin-T ointment. On March 17, 2005, Defendant determined that Plaintiff's condition no longer appeared to be spreading. Plaintiff reported that he had not received any Erythromycin solution, and Defendant said he would look into the situation. On April 25, 2005, Defendant examined Plaintiff, who reported no bleeding or itching.

On June 23, 2005, Defendant noted that Plaintiff showed no active infection, but some scaling remained. Defendant again requested Plaintiff be referred to a dermatologist. On September 12, 2005, Plaintiff complained that his scalp became irritated when his Erythromycin ran out. Defendant prescribed a new steroid solution and refilled Plaintiff's other medications.

On October 11, 2005, Defendant submitted a third request for an off-site referral to a dermatologist. On October 12, 2005, Defendant noted improvement, including the absence of draining pustules and scaling. He renewed Plaintiff's steroid prescription and instructed Plaintiff to follow up in one month.

On October 18, 2005, Plaintiff visited a dermatologist. On October 19, 2005,

Defendant ordered medications recommended by the dermatologist. On October 28, 2005, in response to Defendant's request for a dermatology follow-up, the Medical Director ordered him to determine whether a dermatologist was necessary after following up with Plaintiff in approximately two months.

On November 14, 2005, Defendant found no active draining and only mild peripheral scaling. Defendant prescribed another topical steroid. On December 6, 2005, Defendant noted no active infection, and accordingly did not refer Plaintiff back to a dermatologist.

On October 20, 2006, Plaintiff complained that his condition was flaring again. Defendant prescribed several medications. On November 1, 2006, Defendant renewed Plaintiff's medications. This was Plaintiff's last visit with Defendant.

Plaintiff did not put in any sick call requests for his scalp condition in 2007. He filed this lawsuit on September 19, 2007. On January 1, 2008, Defendant was transferred away from Plaintiff's unit.

### III. DISCUSSION

Plaintiff claims that Defendant failed to take reasonable measures—specifically, arranging continued treatment by a specialist after October 2006—to abate the substantial risk to his future health caused by the scalp infection. As a result, Plaintiff continues to suffer from scalp pain and bleeding. In addition to injunctive relief treatment by a dermatologist, Plaintiff seeks nominal, compensatory, and punitive damages. He also

seeks attorney's fees of $20,000, and an award of costs. Defendant argues that he was not deliberately indifferent to Plaintiff's medical condition and that Plaintiff received prompt medical care. (Deft.'s Mem. in Supp. of Mot. for Summ. J., at 8–9.)

An inmate's Eighth Amendment[2] rights are violated when he is subjected to an unnecessary and wanton infliction of pain, *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A two-part test is used to determine whether prison conditions present a constitutional violation. The plaintiff must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials *subjectively* acted with a "'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 298). Defendant concedes, for the purposes of his motion for summary judgment, that Plaintiff's scalp condition was a serious medical need.

"Deliberate indifference is a very high standard-- a showing of mere negligence will not meet it." *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle,* 429

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

8

U.S. at 105–06). This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Evidence that a defendant recklessly refused or delayed a plaintiff access to medical professionals with sufficient expertise to treat a particular condition may support a finding of deliberate indifference. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277–79 (10th Cir. 2001). Nevertheless, absent exceptional circumstances, disagreements between an inmate and a physician over what level of care is proper cannot support an Eighth Amendment claim. *See, e.g., Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("The affidavits submitted . . . reflect that [plaintiff] was under constant medical supervision from the time of his arrival . . . . Questions of medical judgment are not subject to judicial review.") (citation omitted).

Plaintiff has received extensive medical care, as shown by the twenty-four separate instances of treatment for his scalp condition since his arrival at PCC on February 13, 2001. Defendant repeatedly rendered treatment for Plaintiff's scalp condition, using a variety of medicines. *See Mabry v. Freeman*, No. 2:06-cv-12076, 2007 WL 2332392, at *7 (E.D. Mich. Aug. 15, 2007) (finding no deliberate indifference where defendant did

not "thoughtlessly continue with the same treatment under circumstances where Plaintiff's condition continued to deteriorate" but instead "attempted to adapt his treatment to Plaintiff's needs"). After tests revealed a fungal infection on Plaintiff's scalp, Defendant requested Plaintiff be referred to a dermatologist. After Plaintiff's visit to the dermatologist, Defendant provided the treatment recommended by the dermatologist. Only after a subsequent examination showed no active infection did Defendant decide not to request a follow-up appointment with a dermatologist. Plaintiff reported no further problems for over ten months. When Plaintiff reported on October 20, 2006, that his condition had flared, Defendant prescribed medication. Defendant refilled the prescription on November 1, 2006. Plaintiff sought no further treatment before filing this lawsuit in September 2007. Plaintiff thus does not show that Defendant was aware of any condition that required the attention of a dermatologist after October 2006 or that Defendant would not have referred him to a dermatologist, if Plaintiff had sought treatment.

Plaintiff's argument is essentially that Defendant's care amounted to "no medical treatment at all" because, unlike a dermatologist, Defendant "does not posses [sic] the intricate intellectual medical means to effectively treat my scalp condition." (Pl.'s Compl., Ex. C, Att. 2; *see also* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6–7 (articulating theory of deliberate indifference based on treatment by nonspecialist of condition which required attention of dermatologist).) However, Plaintiff has not

10

submitted any competent evidence that a dermatologist would have recommended a different course of treatment after October 2006, much less that Defendant knowingly rendered substandard treatment. The continued pattern of treatment and improvement in this case falls far short of deliberate indifference. *See Wright*, 766 F.2d at 849.

Finally, Plaintiff has failed to produce any evidence that suggests that, if he were to seek medical attention for his condition, he would not receive whatever medical care was appropriate, including referral to a dermatologist. Thus, Plaintiff has not shown, as he must, that irreparable injury will result unless an injunction issues. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)).

Defendant's motion for summary judgment will be GRANTED. The action will be DISMISSED.

An appropriate order shall issue.

                                                                                                              /s/

                                                       Henry E. Hudson
                                                       United States District Judge

Date: July 28, 2009
Richmond, Virginia